**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

SELENA E. MOLINA
SENIOR MAGISTRATE IN CHANCERY

LEONARD L. WILLIAMS JUSTICE CENTER
500 NORTH KING STREET, SUITE 11400
WILMINGTON, DE 19801-3734

Final Report: February 5, 2025
Date Submitted: October 23, 2024

Jason C. Powell, Esquire
Thomas J. Reichert, Esquire
Laurel A. LaLone, Esquire
The Powell Firm, LLC
1813 N. Franklin Street
Wilmington, DE 19802

Dane Solberg
11 N. Vine Street
Richmond, VA 23220

Eric Solberg
91B 13th Street
Charlestown, MA 02129

> Re:  *In the Matter of the Estate of Elizabeth F. Solberg*,
> Sussex County ROW Folio No. 26236-SEM

Dear Counsel and Parties:

Pending before me are a motion to compel, and exceptions to the first and final accounting of the estate of Elizabeth F. Solberg. The motion to compel is baseless and should be denied. Regarding the exceptions, through myriad complaints, two of Ms. Solberg's grandchildren contest their uncle's administration of the estate and ask me to surcharge their uncle for his alleged failings. I find largely in favor of the uncle/administrator and recommend that the exceptions be dismissed, except in small part. That small part, as more fully explained herein, supports a surcharge against the uncle/administrator to compensate the estate for an

uncompleted pre-death gift of $20,000.00, which should have been, but was not, included in the probate assets. This is my final report.

## I. BACKGROUND[1]

At its core, this case is a family dispute about the disposition of the estate of Elizabeth F. Solberg (the "Estate" of the "Decedent"). The Decedent died intestate on March 16, 2022,[2] survived by one son, Douglas (Doug) Solberg (the "Personal Representative"), and predeceased by another son, Halvard Solberg Jr. ("Halvard Jr."),[3] leaving Halvard Jr.'s children to inherit in his stead: Eric Solberg, Dane Solberg, and Somerset Fleming (the "Grandchildren").

A couple of months after the Decedent's death, Doug petitioned for authority to act as the Estate's personal representative.[4] The Sussex County Register of Wills

---

[1] The facts in this report reflect my findings based on the record developed at the evidentiary hearing held on October 23, 2024 (the "Hearing"). Citations to the Hearing transcript, Docket Item ("D.I.") 60, are in the form of "[First name] Tr." referring to the testimony of the identified person. Defined parties are identified with that designation. I use first names for clarity only and intend no disrespect or familiarity. Citations to the personal representative's exhibits are in the form of "PRX__," and citations to the exceptants' exhibits are in the form of "EX__." I grant the evidence the weight and credibility I find it deserves.

[2] D.I. 2, 5.

[3] Personal Representative Tr. 68:1–2; *see id.* at 68:21–23; D.I. 36 ¶ 3.

[4] D.I. 1–5.

granted letters of administration to the Personal Representative on May 18, 2022, and thereupon, he assumed his role and began administration.[5]

Two of the Grandchildren entered the scene quickly thereafter. On June 14, 2022, less than two months after the Personal Representative assumed his fiduciary role, counsel entered an appearance on behalf of Eric Solberg and Dane Solberg (the "Exceptants").[6] The Exceptants, at least for docket purposes, stayed on the sidelines as the Personal Representative probated the Estate.

The first step was the inventory. The Personal Representative filed an initial inventory on August 18, 2022.[7] Therein, the Personal Representative represented that the Decedent's assets consisted of one solely owned piece of real estate, two solely owned bank accounts (the "Wells Fargo Accounts"), and two vehicles (a 2012 Mini Cooper (the "Mini"), and a 1964 Studebaker Avanti (the "Avanti")), for a total of $143,594.60 in probate assets (excluding the real estate, valued at $660,000.00).[8] On November 15, 2022, the Personal Representative amended the inventory to include additional, previously unidentified miscellaneous personal property

---

[5] D.I. 6.

[6] D.I. 9.

[7] D.I. 11.

[8] *Id.*

($6,050.00) and miscellaneous jewelry ($1,208.00).[9] These additions brought the probate assets up to $150,852.60.

After various extensions approved by the Sussex County Register of Wills, the Personal Representative filed his first and final accounting on December 15, 2023 (the "Accounting").[10] Through the Accounting, the Personal Representative represented that the value of certain probate assets had changed, such that the probate assets overall decreased from $150,852.60 to $130,917.60.[11] From that revised starting point, the Personal Representative deducted $10,986.76 in administrative expenses, $4,383.45 in debts of the Estate, $2,022.49 in funeral expenses, $8,265.00 in attorneys' fees, and $8,000.00 for his commission.[12] These deductions left $96,039.15 remaining for distribution to the intestate heirs.[13]

The remaining beneficiaries of the Estate, the Grandchildren, were promptly provided notice of the Accounting and informed of their right to file exceptions.[14] As provided on the standard beneficiary notice form, the Grandchildren had "three

---

[9] D.I. 15.

[10] D.I. 17–22, 24.

[11] D.I. 24. The largest decrease was for the Wells Fargo Accounts, which decreased by $18,133.00. *Id.* The values attributed to the Mini and miscellaneous personal property went up, while those for the jewelry and the Avanti went down. *Id.*

[12] *Id.*

[13] *Id.*

[14] D.I. 33.

(3) months" from their notice, which was mailed on December 18, 2023, to file exceptions to the Accounting.[15] As that deadline approached, the Exceptants' counsel withdrew from representing them.[16] In doing so, counsel noted the Exceptants would continue as self-represented litigants, implying that exceptions may well be forthcoming.[17] And they were.

On March 14, 2024, just a few days before the deadline, the Exceptants filed their exceptions to the Accounting.[18] The Exceptants take issue with: (1) allegedly missing documentation to substantiate various categories identified in the Accounting (the "First Exception"), (2) assets allegedly missing from the amended inventory (the "Second Exception"), (3) the exclusion of $40,000.00, which was purportedly gifted in checks to the Personal Representative and his son (the "Third Exception"), (4) allegedly unsubstantiated cash reimbursements made to the Personal Representative (the "Fourth Exception"), (5) the Personal Representative's claimed commission (the "Fifth Exception"), (6) the Personal Representative's conduct with the Estate's tangible property (the "Sixth Exception"), (7) allegedly missing documentation detailing the sale of the Estate's assets (the "Seventh

---

[15] *Id.*

[16] D.I. 34.

[17] *Id.*

[18] D.I. 36.

Exception"), and (8) the "likely omission" of additional assets related to a pension and the estate of Halvard Jr. (collectively the "Exceptions," and each individually, an "Exception").[19]

Following standard procedure, the Chief Deputy Register of Wills, on March 14, 2024, notified the Personal Representative of the Exceptions and directed him to respond under Court of Chancery Rule 197(b).[20] The Register of Wills further explained that only after the period for a response (30 days) would the case be referred to the Court of Chancery for assignment to a judicial officer. The Personal Representative responded to the Exceptions on April 17, 2024, largely denying the allegations of wrongdoing, and offering to furnish specific documentation to the Exceptants.[21]

After the Personal Representative's response, this action was sent for assignment. The Chancellor assigned it to me, and I promptly reviewed the docket to determine if the matter may be amenable to mandatory mediation under Court of Chancery Rule 174. Given the nature and extent of the Exceptions, and the relative size of the Estate, I declined to refer this matter to mediation. Rather, on June 26,

---

[19] *Id.*

[20] D.I. 35.

[21] D.I. 41.

2024, my chambers scheduled this matter for a final evidentiary hearing (the Hearing) on October 23, 2024.[22]

As the parties geared up for the Hearing, the Exceptants, on September 23, 2024, filed a motion to compel (the "Motion").[23] Through the Motion, the Exceptants seek an order requiring the Personal Representative to produce the Decedent's bank statements from the Wells Fargo Accounts from January 2022 through June 2022, a June 2023 statement for another bank account, and receipts to substantiate the Personal Representative's reimbursements.[24] The Exceptants also request authorization to speak to organizations that managed the Decedent's assets, as well as the Court's "support" with the Exceptants' request for the Decedent's tax returns for the past three years.[25]

With the Hearing so close at hand, I issued a minute order on October 11, 2024, clarifying that the Motion would be addressed at and in connection with the Hearing; I also set a deadline for the Personal Representative's response thereto.[26] The Personal Representative responded as and when directed, arguing that the

---

[22] D.I. 42.

[23] D.I. 43.

[24] *Id.*

[25] *Id.*

[26] D.I. 52.

Exceptants failed to comply with Court of Chancery Rule 37, that granting the Motion would burden the Personal Representative with needless additional litigation, and that the documents requested by the Exceptants exceed the scope of discovery.[27]

The Hearing went forward as scheduled. Thereat, I heard oral argument on the Motion, and the parties built their record in support of, and opposition to, the Exceptions.[28] At the conclusion of the Hearing, I declined to order any post-hearing briefing or schedule further argument and, instead, took this action under advisement.

## II.    ANALYSIS

Through this report I address the Motion and the Exceptions. Both concern the Personal Representative's administration of the Estate. As part of estate management, an administrator "is responsible for compiling the inventory of the [d]ecedent's estate, managing the [d]ecedent's assets, and paying the [d]ecedent's debts."[29] Fiduciaries of Delaware estates also owe duties to the estate and its beneficiaries. Indeed, administrators are "required to use good judgment in the

---

[27] D.I. 55.

[28] D.I. 60.

[29] *In re Nastatos*, 2023 WL 8269833, at *7 (Del. Ch. Nov. 30, 2023) (citation and quotation marks omitted).

administration of the estate . . . and to act in all ways with good faith. [A personal representative] is not an insurer of assets which come into his hands but he is required to use ordinary care, prudence, skill and diligence[.]"[30] "The administrator, like a trustee, must 'deal fairly with the beneficiaries' and cannot place her interests 'ahead of the interests of the [t]rust and its other beneficiaries.'"[31]

With any estate accounting, heirs and beneficiaries are afforded the opportunity to object to all or part of an accounting through the exceptions process. This right stems from the Delaware Constitution, which provides:

> Exceptions may be made by persons concerned to both sides of every such account, either denying the justice of the allowances made to the accountant or alleging further charges against him or her; and the exceptions shall be heard in the Court of Chancery for the County; and thereupon the account shall be adjusted and settled according to the right of the matter and the law of the land.[32]

But this right is not boundless; it relates solely and wholly to challenges to the financial administration of the probate assets of the Estate. Other estate-related challenges, such as challenges to a decedent's capacity to consent to pre-death

---

[30] *Del. Tr. Co. v. McCune*, 80 A.2d 507, 511 (Del. Ch. 1951).

[31] *Thomas & Agnes Carvel Found. v. Carvel*, 2008 WL 4482703, at *10 (Del. Ch. Sept. 30, 2008) (quoting *In re Howell*, 2002 WL 31926604, at *2 (Del. Ch. Dec. 20, 2002), *aff'd*, 970 A.2d 256 (Del. 2009)).

[32] Del. Const. art. IV, § 32.

transactions, are not appropriate matters for exceptions to an estate accounting.[33]

Thus, the Exceptants' allegations of forgery, undue influence, and other allegedly improper conduct by the Personal Representative before the Decedent's death and before he stepped into his fiduciary role will not be addressed.

After quickly disposing of the Motion, I address the merits of the Exceptions properly before me. Ultimately, I conclude that the Exceptions should be dismissed, in large part, except for one portion of the Third Exception, which should be sustained as further explained herein.

### A.     The Motion should be denied.

After I scheduled the Exceptions for the Hearing, the Exceptants filed the Motion asking for an order from this Court compelling the production of three categories of documents: (1) certain of the Decedent's bank statements, (2) receipts to substantiate the Personal Representative's reimbursements, and (3) the Decedent's tax returns. Through the Motion, the Exceptants also seek access to organizations used to manage some of the Decedent's non-probate assets.

---

[33] *See, e.g.*, *In re Fahey*, 2022 WL 16556701, at *6 (Del. Ch. Oct. 31, 2022) (explaining that an "[e]xceptant's attempt to challenge [a testator's] capacity through exceptions to the [estate's] inventory [was] procedurally improper" and that the exceptant "should have filed a civil action with the Register in Chancery"); *In re Childres*, 2021 WL 3283028, at *11, nn.125, 131 (Del. Ch. Aug. 2, 2021) (providing that exceptions to an accounting alleging undue influence and questioning the validity of testamentary documents were improperly brought when, among other reasons, the accounting did not "address, or refer to, any undue influence claim" or address the will's validity).

The Motion was bound to fail from the get-go. A motion to compel requires a predicate discovery request. Only "[w]hen a party has failed to comply with reasonable discovery requests, [may] the requesting party . . . apply for an order compelling discovery."[34] Despite having ample opportunity to engage in discovery after filing the Exceptions (in March 2024) and before the Hearing (October 2024), the Exceptants did not serve any discovery requests on the Personal Representative. Thus, there is no outstanding discovery request to which I should or must compel the Personal Representative's compliance. The Motion should be denied.[35]

B.     **The Exceptions should be dismissed in part and sustained in part.**

Excluding the out-of-bounds inquires, I now turn to the Exceptions, for which the Exceptants bear the burden of proof. Although "the personal representative bears

---

[34] *Grace Bros. v. Siena Hldgs., Inc.*, 2009 WL 1547821, at *1 (Del. Ch. June 2, 2009).

[35] In so holding, I recognize that the Exceptants are self-represented litigants entitled to some leeway and forgiveness. *See Deutsche Bank Nat'l Tr. Co. Ams., as Tr. for Residential Accredit Loans, Inc., Mortg. Asset-Backed Pass-Through Certificates, Series 2007-QS6 v. Burley*, 2022 WL 17261514, at *4 (Del. Ch. Nov. 29, 2022) ("[T]his Court views *pro se* filings with forgiving eyes."). But that only goes so far. Under the circumstances presented here, even if I decided the Motion could and should be converted into a discovery request, I agree with the Personal Representative that such request would exceed the appropriate scope of discovery. In these estate proceedings, the generally broad scope of discovery applies (*see* Ct. Ch. R. 26), but only insofar as requests are related to the specific and narrow issues involved in exceptions to estate accountings. The Motion, if treated as a discovery request, far exceeds those bounds in, for example, requesting information regarding non-probate assets and taxes. For the in-bounds requests, I find the Personal Representative's evidence and testimony at the Hearing sufficient to meet such needs. Thus, even with exceedingly forgiving eyes, the Motion, if treated as a pseudo-request, fails.

the initial burden of demonstrating that the account was properly prepared[,]"[36] that

burden shifts when—as here—the exceptant seeks a surcharge.[37] In such instances,

the exceptant "must demonstrate affirmatively that a surcharge is warranted."[38]

Here, the parties agreed that the Exceptants bore the burden to prove their

Exceptions, because they sought to surcharge the Personal Representative for

allegedly missing, or misused, Estate assets. Holding the Exceptants to their burden,

I find the First, Second, Fourth, Fifth, Sixth, Seventh, and Eighth Exceptions should

be dismissed, but that the Third Exception should be sustained in part.

### 1.     The Exceptions, in large part, should be dismissed.

The Exceptions largely fail. The Exceptants, through many of the Exceptions,

seek to hold the Personal Representative to an unreasonably high burden. They ask

this Court to find fault in customary and accepted practices that allow for the prompt

and efficient administration of Delaware estates. I decline their invitation to

reconsider, and reverse, these tried-and-true methods. The Exceptants have also

---

[36] *In re Rich*, 2013 WL 5966273, at *1 (Del. Ch. Oct. 29, 2013); *accord* Ct. Ch. R. 198. This burden of proof "reflects the fact that the administrator of the estate stands in a fiduciary capacity to the beneficiaries." *In re Stepnowski*, 2000 WL 713769, at *1 (Del. Ch. May 2, 2000).

[37] "A surcharge is, essentially, a sanction against a personal representative requiring the personal representative to fund (or refund) the estate because the personal representative improperly or poorly handled the estate, engaged in self-dealing, or improperly depleted estate assets." *In re Clark*, 2019 WL 3022904, at *7 (Del. Ch. July 9, 2019).

[38] *Stepnowski*, 2000 WL 713769, at *1, n.1.

failed to meet their burden to prove that allegedly missing or misused assets existed at the Decedent's death, were probate assets, and were not appropriately accounted for by the Personal Representative in the Accounting. And, finally, I find the Personal Representative's commission to be reasonable under the circumstances. Thus, the bulk of the Exceptions, except for the Third Exception, which is addressed below, should be dismissed.

### a. The First, Second, and Seventh Exceptions should be dismissed because they are unfounded.

The Exceptants first contend that the Personal Representative failed to provide documentation to support various expense categories identified in the Accounting. The Accounting lists the expenses by category (such as administrative expenses) and then breaks down, within each category, the expenses and total amount. Although the Personal Representative could have been more detailed by listing expenses by each individual bill, he need not do so; instead, he is required to accurately and fully represent the Estate's expenses.[39] He did. Furthermore, the Personal Representative provided a notarized affidavit in lieu of receipts, which is an accepted practice. He further bolstered the affidavit at the Hearing with several checks and receipts which

---

[39] *Cf. In re Chambers*, 2020 WL 3173032, at *2 (Del. Ch. June 12, 2020) (finding that the personal representative provided sufficient support for his expenses, which need only "accurately and fully" represent the estate's expenses).

were admitted into evidence.[40] Based on this record, the Exceptants have failed to prove that the Personal Representative lacks the necessary support and, as such, the First Exception should be dismissed.

The Exceptants next contend that the Personal Representative failed to include certain assets in the Estate's inventory—more specifically, an engagement ring and desk. I see two problems with this grievance. First, I disagree that such a granular level of detail is required. An administrator of a Delaware estate is not required to list and have appraised "every scrap of garbage that may be found in a house after someone dies[.]"[41] Rather, a personal representative is required to "compil[e] the inventory of [the] [d]ecedent's estate, manag[e] the [d]ecedent's assets, and pay[] the [d]ecedent's debts."[42] Second, the record developed at the Hearing supports that, more likely than not, neither of these purported assets were in the Decedent's possession when she passed.[43] Thus, not only was the Personal Representative not required to list these items in detail, but he cannot be found to have failed to include

---

[40] PRX9–11.

[41] *In re Lomker*, 1997 WL 907995, at *5 (Del. Ch. Dec. 15, 1997).

[42] *Dixon v. Joyner*, 2014 WL 3495904, at *3 (Del. Ch. July 14, 2014).

[43] Per the Personal Representative, whose testimony was credible, the Decedent gave the engagement ring to her grandson in or around June 2021, and both the Decedent and her husband gave the desk to their grandson before their deaths. Personal Representative Tr. 101:17–23, 102:2–16.

them when they were, most likely, not assets of the Estate anyway. The Second Exception should be dismissed.

The final exception through which the Exceptants seek to impose an unreasonably high bar on the Personal Representative is the Seventh Exception. Through such, the Exceptants take exception to the lack of documentation detailing the sale of Estate assets. But "[t]here is no obligation for [a personal representative] affirmatively to seek out additional documentation beyond that necessary to comply with his duties as administrator."[44] The Personal Representative was not required to furnish additional documentation substantiating items' final sale price, and the record developed at the Hearing dispels any concerns that may arise from the dearth of support attached to the Accounting.[45] The Seventh Exception should be dismissed.

> **b.** **The Fourth, Sixth, and Eighth Exceptions should be dismissed because the Exceptants failed to meet their burden.**

Through the Fourth Exception, the Exceptants argue that the Personal Representative paid himself unsubstantiated cash reimbursements totaling over $10,000.00. The Exceptants bore the burden of demonstrating as much and failed;

---

[44] *Dixon*, 2014 WL 3495904, at *4.

[45] *E.g.*, Personal Representative Tr. 96:13–16 (explaining that the Decedent's jewelry was sold when the Personal Representative went to the jeweler, who "offered to buy it and absorb the cost of the appraisal. So we just sold it then right there").

they did not present any affirmative evidence or further explanation at the Hearing in support. Thus, the Fourth Exception should be dismissed.

Through the Sixth Exception, the Exceptants contend the Personal Representative acted inappropriately by moving and trying to sell certain Estate assets, in addition to charging the Estate for the expenses incurred in connection therewith. But the record developed at the Hearing supports that the Personal Representative was appropriately handling the care and disposition of the Estate assets.[46] The Exceptants presented no credible showing to the contrary. Accordingly, the Sixth Exception should be dismissed.

Finally, through the Eighth Exception, the Exceptants contend that the Personal Representative "likely omi[tted]" additional assets from the Estate. As with the Fourth and Sixth Exceptions, the Exceptants failed to present affirmative evidence or further explanation at the Hearing. They have, thus, failed to meet their burden and the Eighth Exception should be dismissed.

      **c.**      **The Fifth Exception should be dismissed because the Personal Representative's commission is appropriate.**

The Exceptants next challenge the Personal Representative's requested $8,000.00 commission. Commissions serve as compensation to a personal

---

[46] *E.g.*, *id.* at 71:8–24 (explaining that an objected-to expense for the Pennsylvania DMV was the product of the Personal Representative's efforts to have the Avanti sold).

representative for their services in collecting assets, handling bills, performing required duties, and for any trouble and incidental expenses incurred as a result.[47] Under Rule 192, this Court looks at several factors to determine if a commission is reasonable. Those factors are:

> [(1)] the time spent, [(2)] the risk and responsibility involved, [(3)] the novelty and difficulty of the questions presented, [(4)] the skill and experience of the personal representative . . ., [(5)] any provisions of the will regarding compensation, [(6)] comparable rates for similar services in the locality, [(7)] the character and value of the estate assets, [(8)] the character and value of assets which are not part of the probate estate but which must be valued and reported on any federal, state, local, or foreign death tax return, [(9)] the time constraints imposed upon the personal representative and the attorney, [(10)] the loss of other business necessitated by acceptance of the administration, and [(11)] the benefits obtained for the estate by the administration.[48]

The Exceptants' challenges do not align with this 11-factor framework. In essence, their argument is that the Personal Representative acted in an improper manner at the expense of the Estate and the Grandchildren, rendering the $8,000.00 commission unreasonable; I do not find this argument persuasive. Rather, I find the requested commission reasonable under the circumstances.

During the Hearing, the Personal Representative testified that he spent roughly 154 hours organizing the Estate, cleaning the Decedent's house, preparing

---

[47] *In re Whiteside*, 258 A.2d 279, 282 (Del. 1969).

[48] Ct. Ch. R. 192(b).

it for sale, and meeting with various personnel to keep the Estate's administration on track, all while handling a number of other obligations.[49] The Personal Representative also incurred out-of-pocket expenses, including in connection with the travel required to administer the Estate from his home in Tatamy, Pennsylvania, which is a six-hour round trip drive to the Decedent's house.[50] Further, the Personal Representative offered into evidence a statement listing, in detail, his performed duties associated with maintaining the Estate from March 17, 2022 to June 13, 2023, along with the amount of time spent on each task.[51] Those tasks included, for example, "major clean-up . . . until [2:00 a.m.]" in the Decedent's house, addressing various tax needs, and handling title issues.[52]

On this record, I find that the commission is reasonable, and the Fifth Exception should be dismissed.

---

[49] Personal Representative Tr. 93:11–14; *see* PRX12.

[50] Personal Representative Tr. 67:23–24, 88:8–12, 93:11–19; *see* PRX9 at 95–115.

[51] PRX12. At a certain point, perhaps the "day [he] found out [the Exceptants] got a lawyer[,]" the Personal Representative stopped tracking his time spent on the Estate because he recognized he was "under a microscope of scrutiny and everything [he] did was going to be scrutinized" and it was no longer "worth it to [him]." Personal Representative Tr. 94:9–16, 122:14–17.

[52] PRX12.

**2.    The Third Exception should be dismissed in part and sustained in part.**

Through the Third Exception, the Exceptants argue that checks written shortly before the Decedent's death, but cashed thereafter, were improperly excluded from the Personal Representative's probate assets.[53] I agree, in part.[54]

The Exceptants' concerns arise from three checks written from the Wells Fargo Accounts that total $40,000.00. The first check is Check #4813, which was dated March 14, 2022, and made payable to the Personal Representative in the amount of $15,000.00 ("Check One").[55] The second check, Check #4814, was also dated March 14, 2022 and made payable to the Personal Representative, for $5,000.00 ("Check Two").[56] Both Checks One and Two were deposited on March 15, 2022 at 2:52 p.m., but did not clear until an unknown time on the Decedent's date of death (March 16, 2022).[57] The final check, Check #4820, was dated March 1, 2022, and made payable to Christian Solberg, the Personal Representative's son,

---

[53] *See* Eric Tr. 49:15–18.

[54] As addressed above, I do not reach the Exceptants' concerns about the Decedent's motivations for writing or authorizing these checks or any alleged capacity issues or undue influence involved. My analysis, in the exceptions context, is limited to whether the funds withdrawn on these checks are or are not probate assets that should have been included in the Decedent's Estate.

[55] EXE.

[56] *Id.*

[57] *See id.*

for $20,000.00 ("Check Three," and together with Checks One and Two, the "Checks").[58] Check Three was not deposited until March 16, 2022, at 3:53 p.m., nearly 12 hours after the Decedent's 4:26 a.m. death, and was not paid until the next day on March 17, 2022.[59]

The Exceptants argue that the Checks are not valid pre-death gifts and should have been included in the probate assets. I agree regarding Check Three, but not Checks One and Two.

To answer whether the Checks should or should not be included in the Decedent's probate estate, I look to Delaware gift law. A valid *inter vivos* gift generally requires two things: (1) the donor's manifested intent to make a gift, and (2) actual or constructive delivery of the gift to the donee.[60] The Checks reflect the Decedent's manifested intent;[61] the more difficult question is delivery.

As revocable instruments, checks are not deemed delivered until the bank issues payment thereon.[62] Stated another way, once a stop-payment order can no

---

[58] *Id.*

[59] *Id.*

[60] *See Honaker v. Est. of Haas*, 2013 WL 1459196, at *2 (Del. Ch. Apr. 11, 2013).

[61] Again, the Exceptants' allegations and concerns regarding the writing or authorization of the Checks is not something that can be properly prosecuted in connection with exceptions to an estate accounting. Setting these concerns aside, the record from the Hearing supports that the Decedent manifested her intent to make gifts through the Checks.

[62] *Honaker*, 2013 WL 1459196, at *2.

longer be issued, a gift by check is complete.[63] Under Title 6 of the Delaware Code,

Section 4-303, a stop-payment order, among others, is too late if received after the

earliest of the following:

> (1) The bank accepts or certifies the item;
> (2) The bank pays the item in cash;
> (3) The bank settles for the item without having a right to revoke the settlement under statute, clearing-house rule, or agreement;
> (4) The bank becomes accountable for the amount of the item under Section 4-302 dealing with the payor bank's responsibility for late return of items; or
> (5) With respect to checks, a cutoff hour no earlier than one hour after the opening of the next banking day after the banking day on which the bank received the check and no later than the close of that next banking day or, if no cutoff hour is fixed, the close of the next banking day after the banking day on which the bank received the check.

Vice Chancellor Glasscock offered further insight in *Honaker v. Estate of Haas*,

2013 WL 1459196, at *2 (Del. Ch. Apr. 11, 2013), noting that "[i]n Delaware, and

in the majority of jurisdictions, when a personal check is given to a donee with the

intent to make a gift, there is no delivery of the gift until the funds needed to honor

that check are available to be withdrawn from the account and the check is presented

and paid. Because checks are revocable until they are cashed, the transfer is not final,

and there has been no delivery, until payment." Although the facts of *Honaker* depart

---

[63] *See* 6 *Del. C.* § 4-303(a); *see generally Honaker*, 2013 WL 1459196, at *2.

from those here insofar as in *Honaker* there was "[in]sufficient funds in the account on which the check was drawn[,]"[64] its rationale still applies.[65]

That brings me to the Checks. Checks One and Two were deposited before the Decedent's death but were paid at an unspecified time on the day of the Decedent's passing. The Decedent died at 4:26 a.m. on March 16, 2022, meaning that for the checks to be delivered and completed gifts, they would have had to be paid out before 4:26 a.m. Whether that happened remains unknown, and that uncertainty falls on the parties with the burden of proof—the Exceptants. Absent a record demonstrating that Checks One and Two were paid out after the Decedent's death, the Exceptants have failed to prove that the Personal Representative should be surcharged for those amounts.

---

[64] *Honaker*, 2013 WL 1459196, at *1.

[65] Although the Personal Representative and Exceptants acknowledged the *Honaker* case, they fixated moreso on *Estate of DeMuth v. Commissioner of Internal Revenue*, T.C.M. (RIA) 2022-072, 2022 WL 2679050 (T.C. 2022), which was corrected and superseded by T.C.M. (RIA) 2022-072, 2022 WL 3051544 (T.C. 2022), and then affirmed non-precedentially by the Third Circuit in 132 A.F.T.R.2d 2023-5122, 2023 WL 4486739 (3d Cir. July 12, 2023). In *DeMuth*, the United States Tax Court was tasked with deciding whether, under a Pennsylvania statute for determining when a stop-payment order is too late, which is nearly identical to Delaware's, checks, paid after the decedent's death, constituted completed gifts. *Id.* at *2; *see* 13 Pa. Cons. Stat. § 4303(a). Under Pennsylvania law, for there to be completion of a gift there must be "irrevocable delivery, actual or constructive," which is also akin to Delaware law requiring "actual or constructive delivery." The court in *DeMuth* explained that because "a stop-payment order could have theoretically been placed on any of those checks before final payment[,]" none represented completed gifts. 2022 WL 3051544, at *4. I adopt a similar interpretation of our statute, based on my reading of *Honaker*.

Check Three is a different story, though. The record from the Hearing reflects that Check Three was deposited 12 hours after the Decedent's death and was not paid until March 17, 2022.[66] As discussed in *Honaker*, because Check Three was not cashed (and in fact, was not even deposited) before the Decedent's death, Check Three was not a completed gift at the time the Decedent passed, and the funds transferred post-death should have been recouped and included in the Decedent's Estate. Because it was the Personal Representative's responsibility to marshal the Estate, the Personal Representative should be surcharged for these improperly excluded funds ($20,000.00). This surcharge will require an amended accounting, which should be filed within thirty (30) days of this report becoming an order of the Court.

## III. CONCLUSION

For the foregoing reasons, I recommend the Motion be denied and the Exceptions be dismissed in part and sustained in part. The Motion is unfounded, absent any outstanding discovery requests. And, regarding the Exceptions, by and large, the Personal Representative properly probated the Decedent's Estate. The only exception is regarding the last-minute gift to the Personal Representative's son for $20,000.00. Because that check was not a completed gift at the time of the

---

[66] EXE.

Decedent's death, those funds should have been recouped by the Personal Representative and included in the Decedent's probate Estate. The failure to do so falls on the Personal Representative, who should be surcharged and required to file an amended accounting to address same.[67]

This is a final report, and exceptions may be filed under Court of Chancery Rule 144.

Respectfully submitted,

*/s/ Selena E. Molina*

Senior Magistrate in Chancery

---

[67] Through that amended accounting, I expect the Personal Representative will update the requested attorneys' fees. In doing so, the Personal Representative may include his proposal, raised for the first time at the Hearing, that the fees be attributed to the Exceptants. Tr. 141:1–11. I will not prejudge the propriety of any increased fees or fee shifting and leave the parties to explore the matter through a more appropriate posture (which will include notice to all interested parties and the opportunity for exceptions).